UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

FILED
APR 28 2022
CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS DANIEL WHITE,<br><br>Defendant. | 1:19-CR-10024-CBK<br><br><br><br>**MEMORANDUM AND ORDER** |

## I.   BACKGROUND

Mr. Thomas White ("defendant"), having pled guilty to Bribery Concerning Programs Receiving Federal Funds, in violation of 18 U.S.C. § 666(a)(1)(B), was sentenced by this Court in October 2021 to 70 months imprisonment, three years of Supervised Release, and ordered to pay $23,000 in restitution. Doc. 57. On March 17, 2022, defendant White motioned this Court for compassionate release pursuant to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), and in the alternative, to be released to home confinement to finish the remainder of his sentence. His two arguments center around the COVID-19 pandemic, as well as living conditions at his prison camp. Mr. White was not ordered to surrender into the custody of the U.S Marshal Service until December 7, 2021. He is currently housed at Federal Prison Camp Yankton, in South Dakota, with a scheduled release date of January 21, 2024.

Defendant's guilty plea stemmed from a 22-count indictment related to his kickback scheme where he corruptly received thousands of dollars due to his position with the Dakota Nations Development Corporation, in return for approving Tatanka's Constructing LLC's bid to build an elderly village complex on land belonging to the Sisseton-Wahpeton Oyate Sioux Tribe, a tribal government that received federal funds. Instead of ensuring his Tribe's elderly population, some of its most vulnerable members,

received the best quality contractors and builders to construct its new facility, Mr. White reached out to John German with an offer. German, a worker at the Tribal Employment Rights Office, formed Tatanka Contracting LLC with Kevin Trio and Mike Cebulla. With German's majority ownership, Tatanka could gain Indian preference for construction contracts planned by the Tribe. In White's call to German, he offered to ensure Tatanka received the bid to construct the elderly village in return for an under-the-table payment. Mr. German estimated that defendant White was paid approximately $22,000 to $23,000 in $7,000 increments, while the defendant contests he only received approximately $7,500. What's not in dispute is that White went behind the back of the Tribe to line his own pocket. Through this bribe, Tatanka was awarded the contract, netting $465,45.07 in profits. Because Mr. White betrayed the trust of his Tribe and community, he was sentenced to 70 months in custody.

Mr. White has only just begun to serve his sentence. No doubt, COVID-19 is a severe public health crisis that has upended our federal prison system and the nation more broadly. But because none of the reasons offered by the defendant approach an extraordinary and compelling circumstance, nor do the factors listed under 18 U.S.C. § 3553(a) lean in favor of an early release, Mr. White's motion for a reduction in term of imprisonment should be denied.

## II.  DISCUSSION

### A. Legal Standard

The Sentencing Reform Act of 1984, Pub. L. 98-473, Title II, § 212, authorized, *inter alia*, the district court, upon motion of the Director of the BOP, to reduce a prison term after considering the factors set forth in 18 U.S.C. § 3553(a), "if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The United States Sentencing Commission was established by the Sentencing Reform Act, codified at 18 U.S.C. § 3582(c)(1)(A). Effective November 1, 2006, the Sentencing Commission adopted Guideline §1B1.13, the policy statement on reduction of a term of imprisonment pursuant to § 3582(c)(1)(A). These provisions are known as the

compassionate release provisions of the federal criminal code and the Federal Sentencing Guidelines.

On December 21, 2018, the First Step Act of 2018 was enacted. Pub. L. 115-391. The First Step Act amended, *inter alia*, § 3582(c)(1)(A) to increase the use and transparency of the compassionate release process. The Act added district court authority to grant compassionate release upon motion of a defendant after the exhaustion of administrative remedies. Frustratingly, though, the Federal Sentencing Guidelines have not been amended since passage of the First Step Act in 2018.[1] This Court proceeds in three steps: (1) assessing whether the defendant has exhausted his administrative remedies; (2) determining whether defendant has demonstrated that there are extraordinary and compelling circumstances warranting early release; and (3) if he has demonstrated such circumstances, whether the 18 U.S.C. § 3553(a) factors weigh in favor of early release. United States v. Marcussen, 15 F.4th 855, 858 (8th Cir. 2021) (*citing* 18 U.S.C. § 3582(c)(1)(A)(i)).

### B. Jurisdiction

Since sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, an exception exists where a court "may reduce the term of imprisonment" when "extraordinary and compelling reasons" exist under 18 U.S.C. § 3553(a) and that the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); United States v. Taylor, 28 F.4th 929, 930 (8th Cir. 2022) (per curiam). The defendant carries the burden to show a sentence reduction is warranted under 18 U.S.C. § 3582(c). United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

---

[1] The Commission lost its quorum in January 2019, stopping any progress in the Commission's work these past three years. See Guerrant v. United States, — U.S. —, 142 S. Ct. 640, 641 (2022) (statement of Sotomayor, J., joined by Barrett, J.) ("At this point, the Sentencing Commission has not had a quorum for three full years. As the instant petition illustrates, the resultant unresolved divisions among the Courts of Appeals (concerning differing interpretations of sentencing guidelines) can have direct and severe consequences for defendants' sentences."). See also United States v. Rodd, 966 F.3d 740, 746 n.7 (8th Cir. 2020) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future.") (alteration in original) (internal quotations omitted).

### C. Exhaustion

This Court can only grant a sentence reduction upon motion of the defendant "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §3582(c)(1)(A). See United States v. Houck, 2 F.4th 1082, 1083–84 (8th Cir. 2021). Here, Warden K. Bennett denied Mr. White's request for consideration of compassionate release on January 25, 2022. Accordingly, this matter is now ripe for adjudication.

### D. Compassionate Release

Compassionate release offers defendants with "extraordinary and compelling reasons" the opportunity to leave prison prior to the conclusion of their sentence. 18 U.S.C. § 3582(c)(1)(A)(i). However, § 3582(c)(1)(A)(i) does not define what "extraordinary and compelling reasons" may be; rather, that was left to the Commission. And, as this Court has noted, the Commission has failed to offer such explanations to date. Prior to the First Step Act, though, the Commission established four categories for district courts to consider when reducing a defendant's term of imprisonment. Pursuant to U.S.S.G. §1B1.13, Application Note 1, these four examples of extraordinary and compelling reasons for compassionate release are:

(A) Medical Condition of the Defendant. —
    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
    (ii) The defendant is—
        (I) suffering from a serious physical or medical condition,
        (II) suffering from a serious functional or cognitive impairment, or
        (III) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant. — The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
(C) Family Circumstances.
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons. — As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

The United States Court of Appeals for the Eighth Circuit has not yet decided whether the district court is bound by the Sentencing Commission's policy statement when considering a compassionate release motion under the First Step Act amendment to § 3582(c)(1)(A). "While some courts adhere to the pre-First Step Act policy statements, other courts have ruled that the pre-First Step Act policy statements are inapplicable, and that a judge has discretion to determine, at least until the Sentencing Commission acts, what qualifies as extraordinary and compelling reasons." United States v. Rodd, 966 F.3d 740, 745 (8th Cir. 2020) (cleaned up). To date, the Eighth Circuit has not yet addressed whether district courts are bound to the pre-First Step Act applicable policy statements. See United States v. Crandall, 24 F.4th 582, 584 (8th Cir. 2022).

Chief Judge Lange has held that the "discretion given to the Director of the BOP in §1B1.13 comment note 1(D) also allows federal judges to consider 'extraordinary and compelling reason[s] other than' those specifically described." United States v. Dillabaugh, 2020 WL 3402392, at *3 (D.S.D. June 19, 2020). In other words, district courts are not limited by §1B1.13 as drafted by the pre-First Step Act Sentencing Commission. Utilizing this broader understanding also comports with the purpose of the Act, which "was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons *without being restricted* to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act." United States v. Harwood, 2022 WL 1082371,

5

at *4 (D.S.D. April 11, 2022) (emphasis in original) (internal quotations omitted). Ultimately, though, the Eighth Circuit has noted that "[s]o long as a district court does not explicitly limit its discretion to the factors identified in U.S.S.G. §1B1.13 and its commentary, it is appropriate for this court to ignore what is, in substance, no more than an academic debate." Marcussen, 14 F.4th at 859.

Here, the defendant makes two separate arguments for compassionate release, both under the catch-all provision of Application Note 1 of U.S.S.G. §1B1.13 for "Other Reasons." One is because of dangers associated with the ongoing pandemic. The second is his claim that the living conditions at FPC Yankton are "problematic." MOTION FOR IMMEDIATE RELEASE, doc. 77 at 2. Both are addressed in turn.

1. *Request for Release Because of Pandemic*

First, and primarily, Mr. White focuses on the risks of exposure to COVID-19 while incarcerated. But as this Court has already observed:

> There can be no doubt that the effects of the global COVID-19 pandemic are extraordinary, and that the disease in some situations may be an "other reason" to grant compassionate release under § 1B1.13 comment note (D). The illness and the potential for its spread has affected the daily life of nearly every American citizen and has resulted in massive disruptions to the economy. Despite these drastic effects, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." The question becomes whether [defendant's] medical conditions . . . combined with the crowded conditions of confinement justify compassionate release.

United States v. Campbell, 2022 WL 137977, at *4 (D.S.D. Jan. 14, 2022) (alteration in original) (internal quotations omitted).

Defendant brings the Court's attention to the list of maladies from which he is experiencing, including hypertension, high cholesterol, chronic gout, ambilocal hernia, enlarged adenoids causing beathing and sinus issues, testicular growth on tests, and prior kidney malfunction. White's prison records list current ailments as obesity, hyperlipidemia, essential hypertension, allergic rhinitis, gastro-esophageal reflux disease without esophagitis, gout, and prediabetes. Indeed, obesity, is one such condition that

leads to higher risk for severe COVID-19 outcomes. UNDERLYING MEDICAL CONDITIONS ASSOCIATED WITH HIGHER RISK FOR SEVERE COVID-19: INFORMATION FOR HEALTHCARE PROFESSIONALS, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated Feb. 15, 2022). Additionally, this Court has previously found that hypertension on its own would not constitute an extraordinary and compelling reason to justify an early release. See United States v. Contreras, 504 F. Supp. 3d 1052, 1060 (D.S.D. 2020). Further, a sister district court has found high cholesterol unavailing as a specific risk factor related to COVID-19. See United States v. Pittman, 465 F. Supp. 3d 912, 917 (S.D. Iowa 2020). This Court has previously found that gastro-esophageal reflux disease is not a listed medical condition that could increase the risk of severe COVID-19-related symptoms. See United States v. Wieman, 2020 WL 5505908, at *3 (D.S.D. Sept. 11, 2020). Here, White's symptoms do not lean in favor of a finding of extraordinary and compelling reasons to warrant early departure from FCP Yankton.

It is unquestioned that prisons can be a hotbed for infection during the pandemic. See generally THE COVID PRISON PROJECT, https://covidprisonproject.com/data/national-overview/ (last visited April 20, 2022). But White's prison records show he has not been vaccinated against COVID-19 before entering custody and does not state if he has received a vaccine since arriving in December 2021. If Mr. White is so worried about the pandemic inside FCP Yankton, it befuddles the Court on why he would not have been vaccinated while in custody.

Regardless, there are currently no staff or inmate confirmed cases of COVID-19 at FCP Yankton. COVID-19 Cases, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited April 20, 2022). While COVID-19 certainly constitutes an unprecedented public health risk, the reality is that defendant's risk of infection at FCP Yankton has not been shown to be any higher than his risk of contracting the virus while residing in Peever, South Dakota, the town he indicated his significant other, Ms. Jenna Rolland, resides on his pre-sentence investigation interview.

With no infections confirmed to be roaming the camp, White falls far short of providing an extraordinary and compelling reason for early release.

Defendant also asserts he has obtained employment in Mobridge, South Dakota, while failing to provide any details of what it may be. Vexingly, in his pre-sentence investigation interview, Mr. White stated that Ms. Rolland resided in Peever. On his motion for compassionate release, White states he would be living in his "home" with his fiancé, while not updating her town of residence. So, if defendant was living in Peever, yet working in Mobridge, he would be facing over a three-hour commute in each direction. The inconsistencies in White's motion cannot rise to the high bar of extraordinary and compelling justifications for release.

### 2. *Vague Allegation of "Problematic" Living Conditions*

Second, Mr. White makes a brief assertion, void of substance, about "problematic" living conditions at FPC Yankton. While it appears to be inextricably tied to his primary ground of relief based around the pandemic, the Court will separately address this one sentence of argument.

It is far from clear what the defendant is alluding to when saying the living conditions are problematic at FPC Yankton. If he is referring to constitutional or statutory challenges to the conditions of his confinement, White cannot use a motion for compassionate release as the proper vehicle. Rather, he must bring a civil action against the allegedly culpable prison and staff.

While the defendant has not met his burden to show extraordinary and compelling reasons to justify release, the Court nevertheless proceeds to analyze whether the factors listed in 18 U.S.C. § 3553(a) weigh in favor of granting compassionate release.

### E. **18 U.S.C. § 3553(a) Factors**

I have considered all the § 3553(a) factors, just as I did during Mr. White's original 2021 sentencing. These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, need for the sentence imposed, kinds of sentences available, pertinent policy statements, need to avoid unwarranted sentence disparities, and need to provide restitution to any victims of the offense. 18

U.S.C. § 3553(a)(1)–(7). This review is not to be a "mechanical recitation of the § 3553(a) factors," but rather district courts must conduct a thorough consideration of all relevant factors, weighing and analyzing them as required in the individualized matter at hand. United States v. Salazar-Aleman, 741 F.3d 878, 881 (8th Cir. 2013) (internal quotations omitted). See United States v. Ross, — F.4th —, 2022 WL 997809, at *2 (8th Cir. 2022) ("We do not require a district court to categorically rehearse each of the section 3553(a) factors on the record when it imposes a sentence") (internal quotations and alterations omitted).

1. *Nature and Circumstances of the Offense*

Mr. White put his own self-interest above that of his Tribe and the elders of his community. Instead of ensuring the elderly housing project was offered to the best builders at the best price, he intervened to line his own pockets with ill-gotten gains. While he may have only received several thousand dollars in bribes, he helped lead to over $460,000 in illicit profits for Tatanka. When given a position of leadership and trust within his community, White abused his authority to care for himself above others. The elderly of the Sisseton-Wahpeton Oyate Tribe deserve better. Tragically, Daniel White tossed aside their interests for his own. It is clear that this factor leans against an early release. For similar reasons, the Court finds a continued need to reflect the seriousness of this crime. See United States v. Vandebrake, 771 F. Supp. 2d 961, 999–1000 (N.D. Iowa 2011) (collapsing the nature and circumstances of the offense and need for appropriate sentence prongs together in a single analysis).

2. *History and Characteristics of Defendant White*

The defendant has little criminal history, which is laudable. Having never been imprisoned and only convicted twice for matters over 20 years ago, White had no points computed for his Criminal History Category when calculating his advisory guideline sentencing range. White also does not have a history of alcohol or substance abuse, gang activity, or worrisome addictions. The Court commends Mr. White's past volunteering in his community, ranging from coaching wrestling and football, to more general service to youths. Defendant has also successfully received a Bachelor of Arts degree from Dakota

Wesleyan University in Mitchell, South Dakota. Before his indictment in this matter, White was gainfully employed at the Tiospa Zina Tribal School in Sisseton, South Dakota, working as a student services coordinator. However, because of this felony conviction, the pre-sentence investigation report casts serious doubt that White can return to this position following his imprisonment. The Court properly takes into consideration the defendant's personal history and characteristics, while acknowledging this on its own is not enough to justify release under the § 3553(a) factors.

### 3. *Remaining § 3553(a) Factors*

Considering the remaining § 3553(a) factors, including the need to afford adequate deterrence, promote respect for the law, provide just punishment, deter criminal conduct, and protect from further crimes of the defendant, among others, all factors lean against early release. To afford adequate deterrence for demands of bribes at the expense of one's own community, § 3553(a) demands that this Court turn away from an early release. Anything else would trample on respect for the law. This original sentence provides just punishment in this matter, while deterring further criminal conduct and protecting the public. This Court's "lodestar is to ensure the sentence is 'sufficient, but not greater than necessary.'" United States v. Clark, 467 F. Supp. 3d 684, 694 (S.D. Iowa 2020) (*quoting* 18 U.S.C. § 3553(a)). White's original sentence accomplishes this task. Accordingly, the defendant's motion should be denied.

### III.   Conclusion

Daniel White has only just begun serving his sentence for seeking bribes and abusing his position of authority within his Tribe. Justifications for early release or home confinement because of the COVID-19 pandemic is unavailing when there is not a single confirmed case within FCP Yankton, among staff or inmates. Further, any assertions of inadequate care while in the facility cannot be properly addressed in this motion, but rather requires a separate civil action. This Court has carefully reviewed the defendant's request for compassionate release and concludes there are no extraordinary and compelling reasons to justify an early departure from his sentence. Even if there were extraordinary and compelling reasons, however, the factors listed under 18 U.S.C. §

3553(a) push strongly against early release. For the reasons laid out here, White should not be released early pursuant to the First Step Act.

IT IS HEREBY ORDERED that defendant Daniel White's motion for immediate release, Doc. 77, is denied.

DATED this 25th day of April, 2022

BY THE COURT:

*Charles B. Kornmann*

_____
CHARLES B. KORNMANN
United States District Judge